## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOE WATERS, Individually and on Behalf of All Others Similarly Situated, | X ) ) ) |
| Plaintiff, | ) ) |
| v. | Civil Action No. _____ ) ) |
| LSC COMMUNICATIONS, INC., THOMAS J. QUINLAN III, M. SHÂN ATKINS, MARGARET A. BREYA, JUDITH H. HAMILTON, FRANCIS J. JULES, THOMAS F. O'TOOLE, RICHARD K. PALMER, DOUGLAS W. STOTLAR, SHIVAN S. SUBRAMANIAM, QLC MERGER SUB, INC., and QUAD/GRAPHICS, INC., | ) **CLASS ACTION COMPLAINT** ) **FOR VIOLATIONS OF** ) **SECTIONS 14(a) AND 20(a) OF** ) **THE SECURITIES EXCHANGE** ) **ACT OF 1934** ) ) ) ) ) |
| Defendants, | ) **JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Joe Waters ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of LSC Communications, Inc. ("LSC" or the "Company") against LSC's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Quad/Graphics, Inc. through its wholly-

1

owned subsidiary QLC Merger Sub, Inc. (collectively "Quad/Graphics").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement (the "S-4") to be filed with the Securities and Exchange Commission ("SEC") on December 12, 2018. The S-4 recommends that LSC shareholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby LSC is acquired by Quad/Graphics. The Proposed Transaction was first disclosed on October 31, 2018, when LSC and Quad/Graphics announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Quad/Graphics will acquire all of the outstanding shares of common stock of LSC in exchange for 0.625 shares of Quad/Graphics Class A common stock (the "Merger Consideration"). The deal is valued at approximately $1.4 billion and is expected to close in mid-2019.

3.      The Proposed Transaction combines two of the largest companies in the printing industry, which has seen a decrease in the number of companies in the sector. Quad/Graphics and LSC are dominant players in the industry, and for some customers the two companies are the only option for high volume printing. The combined company will have a large market share, and that raises antitrust concerns. The Board was aware of those concerns, and negotiated for weeks with Quad/Graphics for a provision in the merger agreement that would force Quad/Graphics to take any necessary steps to ensure the government approved the merger. When Quad/Graphics refused and threatened to walk away from the deal, the Board acquiesced. Now that the government is investigating the Proposed Transaction and an enforcement action against the companies looks likely, there is little protection for the LSC shareholders save a small fee Quad/Graphics must pay if the Merger Agreement is terminated.

4.      Furthermore, the S-4 is materially incomplete and contains misleading

representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the S-4 contains materially incomplete and misleading information concerning the sales process, financial projections prepared by LSC management, as well as the financial analyses conducted by Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch"), LSC's financial advisor.

5.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the S-4 with the SEC or otherwise causing an amendment to the S-4 to be disseminated to LSC's shareholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to LSC's shareholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

6.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of LSC.

7.     Defendant LSC is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 191 North Wacker Drive, Suite 1400, Chicago, Illinois, 60606. LSC common stock trades on NYSE under the ticker symbol "LKSD."

8.     Defendant Thomas J. Quinlan III has been President and CEO of the Company and Chairman of the Board since 2016.

9.     Defendant M. Shân Atkins has been a director of the Company since 2016.

10.    Defendant Margaret A. Breya has been a director of the Company since 2016.

3

11. Defendant Judith H. Hamilton has been a director of the Company since 2016.

12. Defendant Francis J. Jules has been a director of the Company since 2016.

13. Defendant Thomas F. O'Toole has been a director of the Company since 2016.

14. Defendant Richard K. Palmer has been a director of the Company since 2016.

15. Defendant Douglas W. Stotlar has been a director of the Company since 2016.

16. Defendant Shivan S. Subramaniam has been a director of the Company since 2016.

17. Defendants Quinlan, Atkins, Breya, Hamilton, Jules, O'Toole, Palmer, Stotlar and Subramaniam are collectively referred to herein as the "Board."

18. Defendant Quad/Graphics, Inc. is a Wisconsin corporation based in Sussex, Wisconsin.

19. Defendant QLC Merger Sub, Inc. is a Delaware corporation and is a wholly owned subsidiary of Quad/Graphics.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

21. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an

effect in this District; (ii) LSC maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of LSC common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

24.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As of November 2, 2018, LSC had approximately 33.3 million shares outstanding.

(b)     Questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)   Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file an amendment to the S-4 with the SEC that does not contain the material information

5

referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)    whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)    Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)    Plaintiff's claims are typical of those of the other members of the Class.

(e)    Plaintiff has no interests that are adverse to the Class.

(f)    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)    Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)    Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**FURTHER SUBSTANTIVE ALLEGATIONS**

**A. The Board Agrees to Proposed Transaction Despite Antitrust Concerns**

25.    LSC was formed when R.R. Donnelley & Sons Company separated into three

independent, publicly traded companies: LSC; Donnelly Financial Solutions, Inc.; and R.R. Donnelley & Sons Company. LSC prints magazines, catalogs, retail inserts, books and directories, and sells office supplies such as filing products, envelopes, note-taking products, binders and forms. Printing is an $84 billion industry, and LSC was the third-largest printing company in 2017 with $3.6 billion in consolidated net sales in 2017. LSC expects its position in the industry to strengthen; in its Form 10-K filed with the SEC on February 22, 2018 (the "2018 10-K"), LSC stated that it expected an increase in overall net sales for 2018.

26.     The printing industry may be massive in terms of sales, but it is quite small in terms of participants. While there were approximately 7,200 printing companies in 2017 (a decrease of 22.9% since 2007), the top ten printing companies brought in 29.9% of the industry's total sales that year. LSC and Quad/Graphics are two of the largest printing companies, and together they accounted for almost 10% of the industry's total sales for 2017. More important, LSC and Quad/Graphics are serious competitors. Only LSC and Quad/Graphics operate rotogravure presses, which offer superior photo reproduction (key for glossy fashion and photography magazines) and can print almost 2000 pages per second (key for high volume print orders like magazines and catalogs). LSC and Quad/Graphics own a large portion of the U.S. printing plants for smaller volume orders, and the companies have the largest co-mail operations, which is important for minimizing postal costs for smaller volume printings.

27.     For many publishers, a combined LSC-Quad/Graphics would either control the market or be the only player in the market. In its 2018 10-K, LSC claimed that consolidation in the printing industry would lead to lower prices, as competitors lowered their prices because of "synergies achieved." That is, consolidation would cause LSC financial harm. LSC also stated in its 2018 10-K that consolidation would make competition more intense, and "the resulting increase

in competitive pressures could negatively impact our consolidated statements of operations, balance sheets and cash flows." Consolidation would harm LSC by decreasing the prices the Company could charge, but also somehow harm the Company financially through increased competition.

28.     These statements are misleading at best; consolidation (which leads to concentration of market power) leads to higher prices. For example, consolidation in the health-care industry has led to an increase in the cost of routine health services by several hundred percent. And economic research has shown that concentration decreases competition. Decreased competition harms companies and industries by stymying innovation and investment.

29.     Since 1890 the United States has had laws in place to keep markets competitive. These antitrust laws—including the Sherman Act, the Clayton Act and the Federal Trade Commission Act—outlaw certain business practices and prevent mergers that unreasonably restrain trade, create monopolies, are unfair or deceptive, or substantially decrease competition. The Clayton Act specifically prohibits mergers and acquisitions that substantially lessens competition or would create a monopoly. The Federal Trade Commission ("FTC") and the U.S. Department of Justice ("DOJ") review information about proposed mergers to determine if a transaction would change the market in such a way that consumers would see higher prices or fewer or lower-quality goods or services, or if there would be less innovation in the market.

30.     The S-4 makes clear that the Board was aware of the distinct possibility that the Proposed Transaction would run afoul of antitrust laws. When Quad/Graphics made a non-binding proposal on August 10, 2018, it included a provision that both LSC and Quad/Graphics would agree to use reasonable best efforts to secure all necessary regulatory approvals. LSC responded to the proposal by requesting a reverse termination fee if the companies did not receive regulatory

approval to merge. Quad/Graphics agreed, proposing on September 7, 2018 to pay $30 million if there was no regulatory approval of the Proposed Transactions after the companies took reasonable best efforts to secure the necessary regulatory approval. The Board specifically requested that LSC and Quad/Graphics conduct due diligence into regulatory issues to "inform LSC's views" on the reverse termination fee and the efforts to secure regulatory approval. From October 5, 2018 until October 20, 2018, the two parties went back and forth on the language of this one provision. Quad/Graphics refused to agree to divest assets or make any changes to the business in order to obtain regulatory approval for the Proposed Transaction. LSC wanted Quad/Graphics to agree to take action if necessary to obtain regulatory approval. The impasse ended when the Board agreed to drop it in exchange for Quad/Graphics paying LSC $45 million if the Proposed Transaction did not obtain regulatory approval. This provision speaks to the Board's concerns that the Proposed Transaction could be blocked by the government pursuant to the Clayton Act. That is, the Board was concerned that the federal government would find that the Proposed Transaction substantially lessened competition or would create a monopoly.

31.     The Board's concerns appear to be well-founded. On December 14, 2018, Quad/Graphics and LSC disclosed that the DOJ had requested more information concerning the Proposed Transaction as part of its review (called a "second request"). A second request usually occurs if the initial review of a transaction raises competition issues. At that point, the DOJ's review will have one of three outcomes: the review ends and the transaction may proceed; the DOJ finds a proposed merger to be illegal under antitrust laws but negotiates a settlement with the parties (called an "enforcement action") and the transaction may proceed; or the DOJ sues to block the transaction. The vast majority of second requests end with an enforcement action. Enforcement actions involve remedies, that is actions that must be taken by the parties to ensure that there is

competition in the market. Remedies can include divesting assets (such as selling intellectual property rights or selling a business unit) or limiting the combined company's conduct (such as mandatory licensing or non-discrimination provisions). Of course, the Board agreed to remove the condition that Quad/Graphics divest assets to ensure regulatory approval of the Proposed Transaction. While the Board claims the Proposed Transaction is in the best interests of its shareholders, its actions negotiating the Merger Agreement have put the Proposed Transaction in jeopardy.

**B. LSC's Officers Stand to Receive Benefits Unavailable to the Class**

32.     The S-4 acknowledges that the Company's executive officers have interests in the merger that may differ from those of the stockholders and may create conflicts of interest.

33.     RSAs, RSUs, PSUs and phantom shares that have been awarded to and are held by LSC's executive officers and directors will vest and be converted into the right to receive either the Merger Consideration or another amount. Stock options will be converted into the option to purchase shares of Quad/Graphics class A common stock. The treatment of these equity awards, in addition to benefits provided to executive officers through an employment agreement (for Defendant Quinlan) or LSC's Key Employee Severance Plan, will create a windfall for LSC's executive officers that is unavailable to the common stockholders. As demonstrated in the following chart, the executive officers of LSC in total stand to receive up to $27.6 million, if they are let go without "cause" or voluntarily leave for "good reason" after the Proposed Transaction closes:

| Name | Cash | Equity | Benefits | Total |
|------|------|--------|----------|-------|
| Thomas J. Quinlan, III | $9,975,000 | $5,643,329 | $90,776 | $15,709,105 |
| Suzanne S. Bettman | $3,105,000 | $1,271,642 | $30,000 | $4,406,642 |
| Andrew B. Coxhead | $2,430,000 | $1,160,985 | $46,575 | $3,637,560 |
| Kent A. Hansen | $975,000 | $221,587 | $30,000 | $1,226,587 |
| Richard T. Lane | $2,025,000 | $647,252 | $39,132 | $2,711,384 |

### C. The Preclusive Deal Protection Devices

34.     As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

35.     By way of example, section 5.3(a)(i) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal. Section 5.3(a)(ii) demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning an acquisition proposal.

36.     Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be Quad/Graphics. For example, pursuant to section 5.3(c) of the Merger Agreement, the Company must notify Quad/Graphics of any offer, indication of interest, or request for information made by an unsolicited bidder. Thereafter, should the Board determine that the unsolicited offer is superior, section 5.4(b)(i)(iv) requires that the Board grant Quad/Graphics five (5) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior. Quad/Graphics is able to match the unsolicited offer because, pursuant to section 5.4(b)(i)(iv) of the Merger Agreement, the Company must provide Quad/Graphics with the material terms of the superior proposal, eliminating any leverage that the Company has in receiving the unsolicited offer.

37.     In other words, the Merger Agreement gives Quad/Graphics access to any rival bidder's information and allows Quad/Graphics a free right to top any superior offer. Accordingly, no rival bidder is likely to emerge and act as a stalking horse for LSC, because the Merger Agreement unfairly assures that any "auction" will favor Quad/Graphics and allow Quad/Graphics to piggy-back upon the due diligence of the foreclosed second bidder.

38.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances. Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of Quad/Graphics's inadequate offer price.

**D. The Materially Incomplete and Misleading S-4**

39.     The Individual Defendants owe the stockholders a duty of candor. They must disclose all material information regarding the Proposed Transaction to LSC stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

40.     On December 12, 2018, Defendants filed the S-4 with the SEC. The purpose of the S-4 is, inter alia, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, LSC shareholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

### *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

41.     The S-4 discloses management-prepared financial projections for the Company which are materially misleading. The S-4 indicates that in connection with the rendering of BofA Merrill Lynch's fairness opinion, BofA Merrill Lynch reviewed "certain internal financial and operating information with respect to the business, operations and prospects of LSC . . .including

certain financial forecasts relating to LSC prepared by the management of LSC . . . .” Accordingly, the S-4 should have, but failed to, provide certain information in the projections that LSC's management provided to the Board and BofA Merrill Lynch.

42. Notably, Defendants failed to disclose all the iterations of the financial projections for both Quad/Graphics and LSC for fiscal years 2018 to 2022 for: (a) cost of sales; (b) gross profit; (c) operating expenses; (d) depreciation and amortization; (e) stock-based compensation expense; (f) taxes; (g) changes in net working capital; (h) capital expenditures; (i) any other line items used in the calculation of unlevered free cash flow as used by BofA Merrill Lynch in its analyses; and (j) unlevered free cash flow. This omitted information is necessary for LSC stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

### Materially Incomplete and Misleading Disclosures Concerning BofA Merrill Lynch's Financial Analyses

43. With respect to the *Selected Publicly Traded Companies Analysis – LSC and Quad/Graphics,* the S-4 fails to disclose the individually observed multiples for each of the selected public companies analyzed for EV/2018 Adj. EBITDA and EV/2019 Adj. EBITDA. The S-4 also fails to disclose whether BofA Merrill Lynch performed any type of benchmarking analysis for LSC and Quad/Graphics in relation to their respective sets of selected public companies.

44. With respect to the *Discounted Cash Flow Analysis – LSC and Quad/Graphics,* the S-4 fails to disclose the definition of "unlevered free cash flow" utilized by BofA Merrill Lynch in its discounted cash flow analyses of LSC and Quad/Graphics. The S-4 also fails to disclose the individual inputs and assumptions utilized by BofA Merrill Lynch to derive the discount rate range of 8.25% to 9.25% for LSC and the discount rate range of 8.0% to 9.0% for Quad/Graphics. The

S-4 further fails to disclose the implied perpetuity growth rate ranges resulting from the analyses. In addition, the S-4 does not disclose how BofA Merrill Lynch treated stock-based compensation expense (i.e. as a cash or non-cash expense) or how, if at all, BofA Merrill Lynch incorporated LSC's NOLs in the analysis.

### Materially Incomplete and Misleading Disclosures Concerning the Flawed Process

45.     The S-4 also fails to disclose material information concerning the sales process. For example, the S-4 fails to state whether the confidentiality agreements LSC entered into in 2017 with parties (other than Quad/Graphics) were still in effect during the sales process and whether those agreements contain DADW standstill provisions that are precluded those parties from being a part of the sales process and potentially making a topping bid for the Company. The disclosure of the terms of any standstill provisions is crucial to LSC stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

46.     In addition, BofA Merrill Lynch made a number of presentations to the Board, yet those presentations were not disclosed in the S-4. That includes the presentations made to the Board on July 22, 2017; the comparison of LSC and Quad/Graphics provided to the Board on June 14, 2018; the analyses and presentation made to the Board on August 17, 2018; the analyses and presentations made to the Board on September 13, 2018; the presentation on the regulatory approval efforts covenant in precedent transactions as presented to the Board on October 17, 2018; the presentation and analyses presented to the Board on October 25, 2018; and the updated October 25, 2018 analysis presented to the Board on October 30, 2018.

47.     After the Board rejected Quad/Graphics' proposal from June 11, 2018, BofA Merrill Lynch attended at teleconference with the financial advisors for Quad/Graphics to discuss

their valuations of LSC. The S-4 does not disclose whether the Board provided permission for BofA Merrill Lynch to discuss this with Quad/Graphics' financial advisors, or whether the Board was aware that its financial advisor was discussing valuation analyses with Quad/Graphics' financial advisors.

48. Finally, the S-4 discusses various financial projections discussed with the Board or Quad/Graphics, yet those projections were not disclosed in the S-4. That includes the financial projections that were discussed with Quad/Graphics on August 28, 2018; the unaudited forecasted financial information provided to Quad/Graphics on September 13, 2018; and the projected results for LSC discussed with the Board on October 25, 2018. In addition, the S-4 does not disclose if these projections differed from the projections disclosed in the S-4 and, if so, how.

49. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, LSC stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

50. In addition, the Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

51. Specifically, the Individual Defendants undoubtedly reviewed the contents of the S-4 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the S-4 omits the material information referenced above and contains the incomplete and misleading information

referenced above.

52.     Further, the S-4 indicates that on October 30, 2018, BofA Merrill Lynch reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to LSC shareholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning BofA Merrill Lynch's financial analyses which has been omitted from the S-4, and thus knew or should have known that such information has been omitted.

53.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9**

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.     Defendants have filed the S-4 with the SEC with the intention of soliciting LSC shareholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the S-4, which fails to provide the material information referenced above.

56.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each

of the Individual Defendants, by virtue of their roles as officers and/or directors of LSC, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

57.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

58.     Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of LSC shares and the financial analyses performed by BofA Merrill Lynch in support of its fairness opinion; and (iii) the sales process.

59.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the S-4 states that BofA Merrill Lynch reviewed and discussed its financial analyses with the Board during various meetings including on October 30, 2018, and further states that the Board relied upon BofA Merrill Lynch's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

60.     The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

61.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

62.     The Individual Defendants acted as controlling persons of LSC within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of LSC and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

63.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

18

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

65.     In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

66.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representatives and his counsel as Class Counsel;

B.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to

the S-4 with the SEC or otherwise disseminating an amendment to the S-4 to LSC shareholders unless and until Defendants agree to include the material information identified above in any such amendment;

C. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the S-4;

D. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: December 21, 2018

*s/  Anthony F. Fata*

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514

Anthony F. Fata
Christopher P.T. Tourek
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
150 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone:  (312) 782-4880
Facsimile:  (312) 782-4485

*Counsel for Plaintiff and the Proposed Class*

E-mail: afata@caffertyclobes.com
ctourek@caffertyclobes.com

*Designated Local Counsel*

**CERTIFICATION OF PLAINTIFF**

I, Joe Waters, ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed a draft complaint against LSC Communications, Inc. ("LSC") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2.    Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff's transactions in LSC securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

5.    In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing information is correct to the best of my knowledge.

Signed this _20th___ day of December, 2018.

Joe Waters

| Transaction (Purchase or Sale) | Trade Date | Price Per Unit | Quantity |
|---|---|---|---|
| Purchase | 10/07/2016 | $0 | 12 |
| Purchase | 11/03/2017 | $15.975 | 88 |
| Purchase | 7/27/2018 | $14.00 | 300 |
| Purchase | 8/10/2018 | $11.79 | 300 |
| Sale | 12/13/2018 | $8.28 | 300 |
| | | | |